

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 08 CR 122-7 |
| vs. | ) | |
| | ) | Judge Amy J. St. Eve |
| TERRY PETEN | ) | |

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant TERRY PETEN, and his attorney, ROSS EAGLE, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(C), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2.     The indictment in this case charges defendant with conspiracy to possess with intent to distribute and to distribute controlled substances, namely in excess of 5 kilograms of cocaine, a Schedule II Narcotic Drug Controlled Substance, and in excess of 50 grams of cocaine base in the form of crack cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 846 and Title 18, United States Code, Section 2.

3.     Defendant has read the charge against him contained in the indictment, and that charge has been fully explained to him by his attorney.

4.    Defendant fully understands the nature and elements of the crime with which he has been charged.

## Charge to Which Defendant is Pleading Guilty

5.    By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the indictment.  Count One charges defendant with conspiracy to possess with intent to distribute and to distribute a controlled substance, namely in excess of 500 grams of cocaine, in violation of Title 21, United States Code, Section 846 and Title 18, United States Code, Section 2.

## Factual Basis

6.    Defendant will plead guilty because he is in fact guilty of the charge contained in the indictment.  In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

Beginning no later than in or about May 2007, and continuing until at least on or about February 12, 2008, defendant conspired with Barry Ware and others to possess with intent to distribute and distribute a controlled substance, namely in excess of 500 grams of cocaine, in violation of Title 21, United States Code, Section 846 and Title 18, United States Code, Section 2.

More specifically, in or about May 2007, defendant entered a work release program following his release from custody on a 2005 drug trafficking conviction.  Defendant obtained a job at Greg's Auto Body Shop in Will County.  Shortly thereafter, defendant

2

began buying wholesale quantities of cocaine from Ware. Between May 2007 and February 12, 2008, defendant bought approximately 2 1/4 ounces of powder cocaine from Ware every two weeks. Defendant paid Ware approximately $1400 up front for each 2 1/4 ounce quantity of cocaine. On one occasion, defendant bought 4 ½ ounces of cocaine from Ware. Defendant paid Ware $2800 up front for the 4 ½ ounces.

Defendant contacted Ware using cellular telephones, some of which Ware had provided to defendant. For example, upon entering the work release program, Barry Ware provided defendant with a cell phone and told defendant to use it when he wanted to "do something". Defendant understood Ware to be telling him to use the cell phone when defendant wanted to buy cocaine from Ware. Defendant did so. Shortly thereafter, Ware told defendant that the cell phone Ware had given defendant may be "hot". Defendant understood Ware to be telling him that the police may be listening to that particular cell phone. Ware then gave defendant another cell phone.

During the time that defendant bought cocaine from Ware, Ware often delivered the cocaine to defendant via Individual LL. Between May 2007 and September or October 2007, Individual LL often delivered cocaine to defendant at Greg's Auto Body Shop. For example, on May 8, 2007, defendant ordered 2 1/4 ounces of cocaine from Ware. Individual LL delivered the cocaine to defendant on that day at Greg's Auto Body Shop. Defendant paid Individual LL $1400 for the cocaine. Between October 2007 and February 12, 2008,

3

Individual LL delivered cocaine to defendant at the Clinton Street Car Wash or in the area of the Park Wood subdivision in Joliet, Illinois.

The amount of narcotics involved in the conspiracy with which the defendant was personally involved with or which was reasonably foreseeable to the defendant was approximately 1,024 grams of cocaine.

7.    Defendant provided the following information to the government pursuant to a proffer agreement dated March 25, 2008. Pursuant to that proffer agreement and Guideline §1B1.8, this information shall not be used in determining the applicable guideline range:

Defendant first met Ware in 1995 or 1996 while gambling in the Joliet area. Defendant subsequently became friends with Ware. As defendant and Ware continued to associate with one another, defendant learned that Ware sold wholesale quantities of powder cocaine and crack cocaine.

Between the end of 1997 and late 2003 or early 2004, defendant bought wholesale quantities of cocaine from Ware. Defendant paid Ware for the cocaine up front. Defendant broke the cocaine down into smaller quantities, and sold it to customers in the Joliet area. Initially, defendant purchased 1/4 ounce of cocaine from Ware twice a month, at the cost of $200 per 1/4 ounce. Within a few months, defendant progressed to buying ½ ounce quantities of cocaine from Ware twice a month, at the cost of $400 per ½ ounce. A few months later, defendant progressed to buying 1 ounce quantities of cocaine from Ware twice a month, at the cost of $800 per ounce. A year later, defendant progressed to buying 2 1/4

4

ounce quantities of cocaine from Ware every month to six weeks, at the cost of $1400 per 2 1/4 ounces.

In 2003 defendant sold cocaine to an undercover Joliet police officer. Defendant obtained the cocaine from Ware. In early 2004, law enforcement arrested defendant for that offense. In 2005, defendant was convicted of a state drug charge stemming from his 2003 arrest.

8.      The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crime and related conduct.

## Maximum Statutory Penalties

9.      Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.      A maximum sentence of 40 years imprisonment, and a statutory mandatory minimum sentence of 5 years imprisonment. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation for this offense. This offense also carries a maximum fine of $2,000,000. Defendant further understands that the judge also must impose a term of supervised release of at least four years, and up to any number of years, including life.

b.    In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

### Sentencing Guidelines Calculations

10.    Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines.   Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

11.    For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.    **Applicable Guidelines**.  The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing.  The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2008 Guidelines Manual.

b.    **Offense Level Calculations.**

i.    The base offense level for the charge in Count One of the indictment is 26, pursuant to Guideline §§2D1.1(a)(3) and (c)(7), because the amount of controlled substances involved in the offense for which defendant is accountable is at least 500 grams but less than 2 kilograms of cocaine.

6

ii.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct.  If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

iii.    In accord with Guideline §3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.  Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.     **Criminal History Category.**  With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 6 and defendant's criminal history category is III:

i.     On or about November 28, 2005, defendant was convicted of manufacture/delivery of a controlled substance in the Circuit Court of Will County and

7

sentenced to five years imprisonment. Defendant's parole for this offense is scheduled to be terminated on August 15, 2009. Pursuant to Guideline §4A1.1(a), defendant receives three points for this conviction. Pursuant to Guideline §4A1.1(d), defendant receives two points because he committed the instant offense while on parole. Pursuant to Guideline §4A1.1(e), defendant receives one point because he committed the instant offense less than two years after release from imprisonment.

      d.    **Anticipated Advisory Sentencing Guidelines Range.**  Therefore, based on the facts now known to the government, the anticipated offense level is 23, which, when combined with the anticipated criminal history category of III, results in an anticipated advisory Sentencing Guidelines range of 57 to 71 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose. Defendant also acknowledges that he is subject to a statutory minimum sentence of ~~10~~ years' imprisonment. *MM 5 + P. T.B.*

      e.    Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation

officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f.     Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

### Cooperation

12.   Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil or administrative proceeding. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

### Agreements Relating to Sentencing

13.   At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has

continued to provide full and truthful cooperation as required by this plea agreement, then the government shall move the Court, pursuant to Guideline §5K1.1 and 18 U.S.C. § 3553(e), to depart from the applicable Guideline range and statutory minimum sentence and to impose the specific sentence agreed to by the parties as outlined below. Defendant understands that the decision to depart from the applicable guidelines range and statutory minimum sentence rests solely with the Court.

14.    If the government moves the Court, pursuant to Sentencing Guideline §5K1.1 and 18 U.S.C. § 3553(e), to depart from the applicable Guideline range and the statutory minimum sentence, as set forth in the preceding paragraph, this Agreement will be governed, in part, by Federal Rule of Criminal Procedure 11(c)(1)(C). That is, the parties have agreed that the sentence imposed by the Court shall include a term of imprisonment in the custody of the Bureau of Prisons of 66 percent of the low end of the applicable guidelines range or 66 percent of the statutory minimum sentence, whichever is greater. Other than the agreed term of incarceration, the parties have agreed that the Court remains free to impose the sentence it deems appropriate. If the Court accepts and imposes the agreed term of incarceration set forth, defendant may not withdraw this plea as a matter of right under Federal Rule of Criminal Procedure 11(d) and (e). If, however, the Court refuses to impose the agreed term of incarceration set forth herein, thereby rejecting this plea agreement, or otherwise refuses to accept defendant's plea of guilty, either party has the right to withdraw from this plea agreement.

15.     If the government does not move the Court, pursuant to Sentencing Guideline §5K1.1 and 18 U.S.C. § 3553(e), to depart from the applicable Guideline range and the statutory minimum sentence, as set forth above, this plea agreement will not be governed, in any part, by Federal Rule of Criminal Procedure 11(c)(1)(C), the preceding paragraph of this plea agreement will be inoperative, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines, and the statutory minimum sentence without any downward departure for cooperation pursuant to §5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Sentencing Guideline §5K1.1 and 18 U.S.C. § 3553(e).

16.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

17.     The government agrees not to file an information against defendant pursuant to Title 21, United States Code, Section 851 seeking enhancement of defendant's sentence on the basis of a prior conviction for a felony drug offense.

18.     After sentence has been imposed on the count to which defendant pleads guilty, the government will move to dismiss the forfeiture allegation as to this defendant.

## Presentence Investigation Report/Post-Sentence Supervision

19.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing, including the nature and extent of defendant's cooperation.

20.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

21.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions,

correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

22.   This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 08 CR 122-7.

23.   This Plea Agreement concerns criminal liability only.  Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity.  The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

24.   Defendant understands that by pleading guilty he surrenders certain rights, including the following:

13

a.    **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

14

v.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.    At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b.    **Waiver of appellate and collateral rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Sentencing Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and

15

including any order of restitution or forfeiture, in exchange for the concessions made by the United States in this Plea Agreement.  In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, and (in any case in which the term of imprisonment and fine are within the maximums provided by statute) his attorney's alleged failure or refusal to  file a notice of appeal, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255.  The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation, nor does it apply to a request by defendant pursuant to Sentencing Guideline §1B1.10 and 18 U.S.C. § 3582(c) for a reduction of sentence as a result of an amendment to the Sentencing Guidelines applicable to defendant and expressly made retroactive by the United States Sentencing Commission.

      c.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs.  Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

## Other Terms

25.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

## Conclusion

26.     Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

27.     Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement.  Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

17

28.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

29.     Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney.   Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.


AGREED THIS DATE:  _1 - 9 - 09_

_David Stockner for PJF_
PATRICK J. FITZGERALD
United States Attorney

_Brown_
TERRA L. BROWN
Assistant U.S. Attorney

_Tony Peten_
TERRY PETEN
Defendant

_Ross Eagle_
ROSS EAGLE
Attorney for Defendant


18