

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
Aug 13. 2009
AUG 1 3 2009
JUDGE AMY ST. EVE
United States District Court

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 08 CR 122-11 |
| vs. ) | |
| ) | Judge Amy J. St. Eve |
| LAQUINTA MOFFETT ) | |

## PLEA AGREEMENT

1.    This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant LAQUINTA MOFFETT, and her attorney, IRWIN L. FRAZIN, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure.  The parties to this Agreement have agreed upon the following:

### Charge in This Case

2.    The superseding information in this case charges defendant with maintaining a place, namely a house located on Gael Drive in Joliet, Illinois, for the purpose of manufacturing and distributing controlled substances, namely, cocaine and cocaine base in the form of crack cocaine, Schedule II Narcotic Drug Controlled Substances, in violation of Title 21, United States Code, Section 856(a)(1).

3.    Defendant has read the charge against her contained in the superseding information, and that charge has been fully explained to her by her attorney.

4.    Defendant fully understands the nature and elements of the crime with which she has been charged.

## Charge to Which Defendant is Pleading Guilty

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty

to the superseding information.  The superseding information charges defendant with having

knowingly maintained a place, namely a house located on Gael Drive in Joliet Illinois, for

the purpose of manufacturing and distributing controlled substances, namely, cocaine and

crack cocaine, Schedule II Narcotic Drug Controlled Substances, in violation of Title 21,

United States Code, Section 856(a)(1).

## Factual Basis

6.      Defendant will plead guilty because she is in fact guilty of the charge contained

in the superseding information.  In pleading guilty, defendant admits the following facts and

that those facts establish her guilt beyond a reasonable doubt and constitute relevant conduct

pursuant to Guideline §1B1.3:

Beginning no later than 2005, and continuing until at least November 2007,

defendant knowingly maintained a place, namely a house located on Gael Drive in Joliet,

Illinois, for the purpose of manufacturing and distributing controlled substances, namely,

cocaine and crack cocaine, Schedule II Narcotic Drug Controlled Substances, in violation of

Title 21, United States Code, Section 856(a)(1).

More specifically, in 2005, defendant LaQUINTA MOFFETT ("MOFFETT") met

Barry Ware in the Joliet, Illinois area.  They began dating soon thereafter.  Between 2005 and

the Fall of 2007, MOFFETT lived at a home on Gael Drive in Joliet, Illinois (hereinafter

2

"MOFFETT's residence"). During that time, Ware often stayed at MOFFETT's residence, and used MOFFETT's residence to manufacture and distribute drugs, namely cocaine and crack cocaine. For example, between 2005 and November 2007, MOFFETT arrived home just as Ware was cleaning up from cooking cocaine into crack cocaine. MOFFETT knew that Ware put a mixture of cocaine, baking soda, and water in a glass container. She further knew that Ware cooked the resulting mixture in the microwave.

During that same period of time, MOFFETT saw individuals deliver packages to Ware at MOFFETT's home on five to ten occasions. MOFFETT believed that the packages contained large quantities of cocaine. MOFFETT never saw the contents of the packages. On at least one occasion, MOFFETT saw a brick-shaped package wrapped in plastic in a box in her garage. MOFFETT believed it to contain cocaine or money from WARE's sale of drugs. On one occasion in 2007, MOFFETT saw Ware leave her residence with a duffel bag containing money from WARE's sale of drugs.

Between 2005 and November 2007, Ware directed MOFFETT to deliver cocaine and crack cocaine to his customers. MOFFETT did so. On each occasion, Ware told MOFFETT where to deliver the cocaine or crack cocaine. Ware subsequently met MOFFETT at MOFFETT's residence, or at a mutually agreed upon location, where Ware delivered a package MOFFETT believed to contain either cocaine or crack cocaine. MOFFETT never looked inside of the package.

On approximately five occasions, Ware directed MOFFETT to deliver crack cocaine to Bobby Mitchell. MOFFETT did so. MOFFETT knew that she was delivering distribution quantities of crack cocaine, but did not know the exact amounts. For example, on October 6, 2007, Ware directed MOFFETT to deliver crack cocaine to Bobby Mitchell in the parking lot of Bobby McGee's Tavern located at the corner of Gael and Ingalls in Joliet. Early that afternoon, MOFFETT left her residence driving a maroon Chrysler. At the time, MOFFETT was in possession of a package containing approximately 123.8 grams (nearly 4 ½ ounces) of cocaine base in the form of crack cocaine. MOFFETT drove the Chrysler to the parking lot of Bobby McGee's Tavern. MOFFETT exited the Chrysler with the bag containing the crack cocaine, and walked towards a Lexus in which Bobby Mitchell was sitting. MOFFETT leaned into the passenger window of the Lexus, and gave Bobby Mitchell the bag containing the crack cocaine. MOFFETT then backed away from the Lexus and reentered the Chrysler in which she had arrived. MOFFETT then drove away from the parking lot and returned to her residence.

On several occasions between 2005 and 2007, Ware directed MOFFETT to pick up drug proceeds on his behalf. MOFFETT did so. For example, on at least one occasion, Ware directed MOFFETT to pick up money from Kevin Waddell from Waddell's sale of drugs that Ware had sold to Waddell. MOFFETT spent a portion of the money she picked up on Ware's behalf on herself. As a result, Ware stopped asking MOFFETT to pick up money on

4

his behalf. The most money MOFFETT picked up for Ware at one time was $2,600, which represented proceeds from approximately 2 1/4 ounces (63 grams) of cocaine.

Ware paid MOFFETT's rent for her residence, and other expenses. Ware also bought MOFFETT and MOFFETT's daughter clothes and gifts. MOFFETT knew that Ware obtained the money he spent on her from drug trafficking. MOFFETT further knew that Ware had not held a legitimate job since his release from prison in 2002.

The amount of narcotics with which the MOFFETT was personally involved with or which was reasonably foreseeable to the MOFFETT was at least 438.8 grams of crack cocaine, and at least 3,252 grams of cocaine.

7.     The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crime and related conduct.

## Maximum Statutory Penalties

8.    Defendant understands that the charge to which she is pleading guilty carries the following statutory penalties:

a.    A maximum sentence of 20 years' imprisonment.  This offense also carries a maximum fine of $500,000.  Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b.    In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which she has pled guilty, in addition to any other penalty imposed.

## Sentencing Guidelines Calculations

9.    Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines.  Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10.    For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.    **Applicable Guidelines**.  The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing.  The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2008 Guidelines Manual.

b.    **Offense Level Calculations.**

i.    The base offense level for the charge in the superseding information is 34, pursuant to Guideline §§2D1.8(a)(1), 2D1.1(a)(3) and (c)(3), because the amount of controlled substances involved in the offense for which defendant is accountable is approximately 3,232 grams of cocaine and approximately 438.8 grams of cocaine base in the form of crack cocaine. Pursuant to the drug equivalency table set forth in Guideline §2D1.1, cmt. n. 10, these controlled substances are equivalent to approximately 9,422.4 kilograms of marihuana. Pursuant to Guideline §2D1.1, cmt. n. 10(D)(I), because the offense involves cocaine base in the form of crack cocaine and one other controlled substance, the combined offense level should be reduced by two levels to 32. Because the defendant receives an adjustment under Guideline §3B1.2(b) for being a minor participant in the offense, the base offense level decreases by two levels to 30, pursuant to Guideline §2D1.1(a)(3)(i).

ii.    A two-level reduction in the offense level is appropriate under Guideline §3B1.2(b) because defendant was a minor participant in the criminal activity.

iii.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for her criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for her actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested

financial information relevant to her ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

       iv.    In accord with Guideline §3E1.1(b), defendant has timely notified the government of her intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

       v.    Based on the evidence now known to the government, the parties agree, subject to the Court's approval, that Guideline §5C1.2 is applicable, and the offense level shall be reduced by two levels, pursuant to Guideline §2D1.1(b)(11).

       c.    **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

       d.    **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 23, which, when combined with the anticipated criminal history category of I, results in an anticipated

8

advisory Sentencing Guidelines range of 46 to 57 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

        e.      Defendant and her attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw her plea on the basis of the Court's rejection of these calculations.

        f.      Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw her plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Cooperation

11.    Defendant agrees she will fully and truthfully cooperate in any matter in which she is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois.  This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil or administrative proceeding.  Defendant agrees to the postponement of her sentencing until after the conclusion of her cooperation.

## Agreements Relating to Sentencing

12.    At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation.  If the government determines that defendant has continued to provide full and truthful cooperation as required by this plea agreement, then the government shall move the Court, pursuant to Guideline §5K1.1, to depart downward from the low end of the applicable guidelines range, and shall recommend a sentence that includes a term of imprisonment in the custody of the Bureau of Prisons of 66 percent of the low end of the applicable guidelines range. Defendant shall be free to recommend any sentence.  Defendant understands that the decision to depart from the applicable guidelines range rests solely with the Court.

13.    If the government does not move the Court, pursuant to Sentencing Guideline §5K1.1, to depart from the applicable Guideline range, as set forth above, the preceding paragraph of this plea agreement will be inoperative, both parties shall be free to recommend

10

any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. §3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to §5K1.1. Defendant may not withdraw her plea of guilty because the government has failed to make a motion pursuant to Sentencing Guideline §5K1.1.

14.    It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above.  Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw her guilty plea.

15.    Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

11

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

16.     This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 08 CR 122-11.

17.     This Plea Agreement concerns criminal liability only.  Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity.  The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

18.     Defendant understands that by pleading guilty she surrenders certain rights, including the following:

        a.     **Right to be charged by indictment.**  Defendant understands that she has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members.  By signing this Agreement, defendant knowingly waives her right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising

from the information, the information process, or the fact that she has been prosecuted by way of information.

      **b.**    **Trial rights.** Defendant has the right t o persist in a plea of not guilty to the charge against her, and if she does, she would have the right to a public and speedy trial.

      i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

      ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and her attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

      iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them.

vi.    At a trial, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.    At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

c.    **Waiver of appellate and collateral rights.**    Defendant further understands she is waiving all appellate issues that might have been available if she had exercised her right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal her conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Sentencing Guideline §5K1.1 and

14

18 U.S.C. §3553(e), defendant knowingly waives the right to appeal her conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture, in exchange for the concessions made by the United States in this Plea Agreement. In addition, defendant also waives her right to challenge her conviction and sentence, and the manner in which the sentence was determined, and (in any case in which the term of imprisonment and fine are within the maximums provided by statute) her attorney's alleged failure or refusal to file a notice of appeal, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

        d.      Defendant understands that by pleading guilty she is waiving all the rights set forth in the prior paragraphs Defendant's attorney has explained those rights to her, and the consequences of her waiver of those rights.

## Presentence Investigation Report/Post-Sentence Supervision

19.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charge against her, and related matters.  The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing, including the nature and extent of defendant's cooperation.

20.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of her financial circumstances, including her recent income tax returns as specified by the probation officer.  Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of her sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

21.     For the purpose of monitoring defendant's compliance with her obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns

(together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

22.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

### Conclusion

23.     Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

24.     Defendant understands that her compliance with each part of this Plea Agreement extends throughout the period of her sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event she violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that

17

in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

25.     Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

26.     Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

27.     Defendant acknowledges that she has read this Plea Agreement and carefully reviewed each provision with her attorney.  Defendant further acknowledges that she understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _August 13, 2009_

PATRICK J. FITZGERALD
United States Attorney

LAQUINTA MOFFETT
Defendant

TERRA L. BROWN
Assistant U.S. Attorney

IRWIN L. FRAIZIN
Attorney for Defendant

18